**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ALLSTATE INSURANCE COMPANY**,

    Plaintiff/Counterdefendant,

v.     No. **Civ. 04-1285 MCA/WPL**

**FORD MOTOR CREDIT COMPANY**,

    Defendant/Counterclaimant.

**MEMORANDUM OPINION AND ORDER**

    This matter is before the Court on Plaintiff Allstate Insurance Company's ("Allstate") *Motion for Summary Judgment on Counterclaim* (Doc. No. 70). Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court determines that Plaintiff Allstate is entitled to summary judgment on Defendant Ford Motor Credit Company's ("FMCC") counterclaim for violation of the Unfair Insurance Practices Act and for bad faith. Therefore, Allstate's motion is granted for the reasons set forth below.

**I.     BACKGROUND**

    The following facts are either undisputed or are those that most favor the party opposing summary judgment, Defendant FMCC. The following facts supplement those that are set forth in the factual background section in the *Memorandum Opinion and Order* (Doc. 78) granting Allstate's motion for summary judgment (Doc. No. 30). Those facts are hereby incorporated by reference.

Following Carl Coffman's ("Coffman") collision with John Marquez, Susan Cary, an insurance adjuster for Allstate, began trying to determine whether there was going to be liability coverage or uninsured/underinsured motorist coverage under the Policy for the deceased's estate.  Pl.'s Mot. for Summ. J. on Counterclaim (Doc. No. 70) (hereinafter "Counterclaim Mot."), Ex. B at 82-83, 86.  In the course of her investigation, Ms. Cary gathered information from Phillip Gaddy, counsel in the *Marquez* lawsuit for Denise Marquez and Donna Ortiz, and Norman Weiss, counsel in the *Marquez* lawsuit for Carl Coffman.  *See id.*, Ex. B at 82-84; Def.'s Resp. to Pl.'s Mot. for Summ. J. on Counterclaim (Doc. No. 73) (hereinafter "Counterclaim Resp.") at 2 and Ex. 1 at 113.  Ms. Cary also examined two two-page police incident reports of the criminal investigation into John Marquez's death.  Counterclaim Mot., Ex. B at 85-89.  Ms. Cary, however, never obtained the complete 300-page police report regarding the incident.  Counterclaim Resp., Ex. 1 at 127-31 & Ex. 3.  Ms. Cary did not obtain any other pleadings from the *Marquez* lawsuit other than those sent to her by Ronald Segal, counsel for FMCC.  Counterclaim Resp., Ex. 1 at 135-37.

On August 11, 2004, Mr. Segal, on behalf of FMCC, demanded that Allstate participate in the defense of FMCC in the *Marquez* action and indemnify FMCC from any judgment or settlement in the case.  Initial Pre-Trial Report ("IPTR"), Stipulation 6; Counterclaim Mot., Undisputed Material Fact 2.  The letter requested "liability coverage under th[e] policy" for FMCC, an additional insured.  Counterclaim Mot., Ex. C at 1.  Mr. Segal attached a copy of the second amended complaint in the *Marquez* lawsuit to the letter.

2

*Id.* The letter stated that the state court complaint "alleges that FMCC is liable for the alleged wrongful conduct of the repossession driver and repossession contractor." *Id.*, Ex. C at 2. The letter also explained that the state court would be entering an order making FMCC liable for any negligence the jury might find on the part of the repossession driver or his employer. *Id.* Additionally, the letter provided further details about the case: "FMCC assigned the account of Marquez Surveying for repossession. The repossession driver was therefore using the truck with the permission of FMCC, the additional insured. The driver allegedly operated the truck negligently, and the second amended complaint alleges that FMCC is liable for that negligence." *Id.*

Furthermore, the second amended complaint referred to Coffman as a "recovery agent" and alleged that he repossessed the vehicle on behalf of FMCC. *Id.*, Ex. D at 2-5. The complaint described Coffman as an employee of Great Western Recovery ("GWR") and as an employee or agent of Dennis Seibert ("Seibert"). *Id.*, Ex. D ¶¶ 7, 36. In addition, the complaint alleged that FMCC was responsible for its actions as well as those of others taken on its behalf, including GWR, Coffman, Don Determan, Seibert, "and the employees or agents of Dennis Seibert, engaged by [FMCC] and [GWR] to take possession of vehicles." *Id.*, Ex. D ¶ 29. The complaint also explained that on August 9, 2002, Coffman "jumped in and started the vehicle," "struck and ran over John Marquez with the vehicle," and "operated the vehicle carelessly and heedlessly." *Id.*, Ex. D ¶ 17-18, 20.

Ms. Cary reviewed the letter of August 11, 2004, and the facts she had obtained through her investigation. Counterclaim Mot., Undisputed Material Fact 4. After receiving

FMCC's demand for a defense and indemnification, however, Ms. Cary did not conduct any additional factual investigation relating to the events of the accident. Counterclaim Resp., Ex. 1 at 165-66. Ms. Cary then drafted a letter dated October 6, 2004, denying coverage and declining to provide indemnification or a defense. Counterclaim Mot., Undisputed Material Fact 4. Specifically, the October 6, 2004 letter stated, "It is our understanding that the incident forming the basis of the complaint occurred when the agent of Ford Motor Credit Company repossessed the leased vehicle. Thus, Ford Motor Credit is not entitled to any coverage under the plain language of the endorsement." *Id.*, Ex. E.

On October 20, 2004, FMCC, through Mr. Segal, wrote to Allstate that it was claiming that Coffman was neither an agent nor in possession of the leased vehicle. *Id.*, Undisputed Material Fact 5. On November 12, 2004, Allstate filed suit against FMCC, seeking a declaratory judgment that Allstate does not have a duty to defend or indemnify FMCC for the claims asserted in the *Marquez* lawsuit. *Id.*, Undisputed Material Fact 6. FMCC settled the *Marquez* lawsuit on November 18, 2004. *Id.*, Undisputed Material Fact 7.

On November 8, 2005, Allstate filed a Motion for Summary Judgment on Counterclaim (Doc No. 70), asserting that it was entitled to summary judgment on both FMCC's counterclaim for bad faith and for violation of New Mexico's Unfair Insurance Practices Act. On November 23, 2005, FMCC filed a response to the motion (Doc. No. 73), and on December 7, 2005, Allstate filed its reply (Doc. No. 75).

## II.     DISCUSSION

### A.     Standard of Review

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248.  The Court will consider Allstate's motion in light of these standards.

### B. Unfair Insurance Practices Act claim

In its counterclaim, FMCC alleged, among other things, that Allstate's "failure and refusal to provide coverage under the Policy" was "in violation of NMSA 1978 § 59A-16-20." Counterclaim at ¶ 24.  Allstate moved for summary judgment on this claim, asserting that FMCC did not have evidence to support the claim as there was no evidence that Allstate's conduct constituted a general business practice.  Counterclaim Mot. at 9-10.  In responding to Allstate's argument as to the Unfair Insurance Practices Act, FMCC stated, "FMCC will not contest this portion of the motion."  Because FMCC does not contest dismissal of this claim and has not shown contrary evidence to support the claim, the Court will grant Allstate's motion for summary judgment as to FMCC's counterclaim for violation of the Unfair Insurance Practices Act, NMSA § 59A-16-20.

### C. Bad faith claim

In addition, Allstate argues that it is entitled to summary judgment on FMCC's counterclaim for bad faith because Allstate could not have acted in bad faith in refusing to defend and indemnify FMCC under the Policy when the Policy did not provide FMCC coverage because the endorsement terminated just prior to the collision.  Allstate also contends that the denial of coverage does not constitute bad faith as a matter of law because its decision to deny coverage was fairly debatable and not unreasonable.  FMCC counters that, regardless of whether coverage existed or not under the Policy, Allstate had a duty to

conduct a full and fair investigation of FMCC's claim before deciding not to provide a defense. FMCC asserts that material questions of fact exist as to whether Allstate conducted a reasonable investigation, precluding summary judgment on its bad faith claim.

New Mexico's uniform jury instruction for a bad faith failure to defend claim provides the following:

> A liability insurance company has a duty to defend its insured against all claims which fall within the coverage of the insurance policy. A liability insurance company must act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend.
>
> An insurance company acts in bad faith in refusing to defend a claim if the terms of the insurance policy do not provide a reasonable basis for the refusal.

UJI 13-1703. According to UJI 13-1703, an insurance company only has a duty to defend claims that fall within the coverage of the policy. Thus, where it is determined that the policy does not provide coverage, an insurance company cannot have violated its duty to defend. *See* UJI 13-1703, Committee comment ("If there is no obligation to pay the claim against the insured, there is no duty to defend.") (citing *American Employer's Ins. Co. v. Crawford*, 87 N.M. 375, 533 P.2d 1203 (1975)). A trial court's determination that there is no coverage under the policy, and thus no duty to defend, is determinative of a bad faith claim. *See* UJI 13-1703, Committee comment (noting that, although a bad faith claim is independent of the coverage issue, "the trial court's determination of the coverage issue may be determinative of the bad faith claim"); *Crawford*, 87 N.M. at 381, 533 P.2d at 1209 (stating that, since there was no coverage under policy, insurer had no duty to pay judgment against its insured and therefore did not display bad faith for its failure to settle claim). *See*

*also Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 102 N.M. 28, 690 P.2d 1022 (1984) ("*Crawford* found that since there was no coverage under the policy, the insurer had no duty to pay the judgment against its insured and therefore could not be held accountable for its failure to settle the claim.") (citing *Crawford*, 87 N.M. at 381, 533 P.2d at 1209).

In its counterclaim, FMCC alleges that Allstate's "failure and refusal to provide coverage under the Policy for any of the claims made against FMCC in the *Marquez* action is wrongful, [and] is in bad faith." Counterclaim ¶ 24. FMCC's claim of bad faith is thus based on the allegedly wrongful denial of coverage. This Court, however, in a *Memorandum Opinion and Order* (Doc. 78) filed on February 24, 2006, determined that the Policy did not provide coverage to FMCC because, according to the exclusion clause, the Policy terminated when Coffman took possession of the F-250 in driving the vehicle away during the repossession attempt on behalf of FMCC. Because the Policy did not provide coverage to FMCC, Allstate did not have a duty to defend or indemnify FMCC. *See* UJI 13-1703, Committee comment (citing *Crawford*, 87 N.M. 375, 533 P.2d 1203). Allstate thus, as a matter of law, did not act in bad faith in refusing to defend or indemnify FMCC where it had no duty to defend or indemnify. *See Woodman Accident & Life Ins. Co. v. Bryant*, 784 F.2d 1052, 1056 (10th Cir. 1986) (holding that, where insurer had no duty to pay insured's expenses because policy did not provide coverage, insurer could not be liable under tort of bad faith); *Charter Services, Inc. v. Principal Mut. Life Ins. Co.*, 117 N.M. 82, 88, 868 P.2d 1307, 1313 (Ct. App. 1994) ("the concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy"); *Crawford*, 87 N.M.

at 381, 533 P.2d at 1209 (since there was no coverage under policy, insurer had no duty to pay judgment against its insured and therefore did not display bad faith for its failure to settle claim); Stephen S. Ashley, Bad Faith Actions Liability & Damages § 4:10 (2005) ("An insurer does not commit bad faith by refusing to defend if it has no duty to defend."); *Id.* § 5A:2 ("If the claim of bad faith is predicated on a charge that the insurer erred in denying coverage for a claim, the insurer is not guilty of bad faith if it is ultimately determined that its position on coverage was correct.") and cases cited therein.

FMCC nonetheless argues that Allstate did not conduct a sufficient investigation before determining that the Policy did not deny coverage. According to FMCC, even though the Policy did not provide coverage for FMCC, Allstate could still be held liable for a bad faith claim if their investigation was not sufficient to make that determination. This Court rejects this argument. Allstate cannot be held liable to its insured for bad faith, even if Allstate's investigation were inadequate, where Allstate correctly concluded that the Policy did not afford coverage for the loss. *See Charter Services*, 117 N.M. at 88, 868 P.2d at 1313 ("Because Defendant was not contractually obligated to pay under the policy, it follows that Plaintiff cannot prevail on its claim that Defendant acted in bad faith by denying Shores' claim without adequate investigation. The policy did not provide coverage for Shores' injuries."). *See also Avery Dennison Corp. v. Allendale Mutual Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002) (noting that California law does not permit recovery against insurer on bad faith claim unless insurance benefits are due under policy); *Murray v. State Farm Fire and Cas. Co.*, 268 Cal. Rptr. 33, 65-66 (Cal. Ct. App. 1990) (holding that, whatever the

9

merits of assertion that insurer performed an inadequate investigation before concluding policy did not afford coverage, fact that investigation yielded correct conclusion precluded any bad faith claim that inadequacy caused any damage).[1]

This result is also consistent with the law of causation and damages. Under UJI 13-1709, a causation instruction as to the "cause of a loss" must be given in every bad faith cause of action. UJI 13-1709 & Committee comment (noting that "compensation is for the monetary losses actually caused by the prohibited conduct"). Therefore, to prevail on a bad faith claim, a plaintiff must demonstrate that the defendant's bad faith caused the loss to the plaintiff. FMCC must therefore show that Allstate's alleged bad faith failure to conduct an adequate investigation caused FMCC harm. *See* Stephen S. Ashley, Bad Faith Actions Liability & Damages § 5:8 (2005) ("An inadequate investigation does not entitle the insured to a verdict in his favor unless the insurer's lapse causes harm to the insured."). FMCC cannot make this showing because FMCC's bad faith claim is linked solely to Allstate's allegedly wrongful failure and refusal to provide coverage. FMCC has not alleged any consequential loss, for example, as a result of any unreasonable delay in performing the investigation. Because FMCC's alleged losses arise solely from the denial of coverage, even

---

[1] *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, 135 N.M. 106, does not support FMCC's argument that an unreasonable investigation alone can support a bad faith claim when the insurer's denial of coverage was not in error. *Sloan* merely recognized that a failure to properly investigate a claim may be strong evidence of bad faith. *Id.* at ¶ 21. However, *Sloan* held that failure to conduct a proper investigation "is not in itself sufficient to support the plaintiff's bad-faith failure-to-settle claim." *Id.* Thus, this Court finds that *Sloan* does not undermine the holding of *Charter Services*.

if Allstate had conducted the most thorough investigation possible, Allstate still would reasonably have denied coverage, as the complete record shows that the Policy does not provide coverage. *See id.* ("If a reasonable insurer would still have denied the claim, despite knowledge of the omitted information, then the insurer's breach of its duty to investigate caused the insured no harm, for even if it had completely fulfilled its duty to investigate, the insured would not have obtained his insurance benefits without a lawsuit."). Accordingly, Allstate's alleged failure to investigate simply did not cause any harm or loss to FMCC as, even after a full factual investigation, Allstate could reasonably conclude that the Policy did not provide coverage to FMCC for Coffman's collision with John Marquez.

### III.   CONCLUSION

In sum, this Court in a separate *Memorandum Opinion and Order* (Doc. 78) determined that coverage under Allstate's Policy terminated according to the exclusion provision when Coffman began driving the F-250 prior to the collision with John Marquez. Allstate thus had no duty to defend or indemnify FMCC under the Policy. Consequently, Allstate did not act in bad faith in refusing to defend or indemnify FMCC based on a lack of coverage.

**IT IS THEREFORE ORDERED** that *Plaintiff Allstate's Motion for Summary Judgment on Counterclaim* (Doc. No. 70) is hereby **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that Defendant Ford Motor Credit Company's counterclaim is **DISMISSED WITH PREJUDICE** in its entirety.

**SO ORDERED** this 7th day of March, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge